```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION

TARGIN SIGN SYSTEMS, INC.,       )
etc.,                            )
                                 )
                Plaintiff,       )
                                 )
     v.                          )     No.  09 C 1399
                                 )
PREFERRED CHIROPRACTIC CENTER,   )
LTD.,                            )
                                 )
                Defendant.       )
```

                    <u>MEMORANDUM OPINION AND ORDER</u>

     Although the litigants in this putative class action,

brought under the Telephone Consumer Protection Act ("Act," 47

U.S.C. §227(b)(3)), have waged battle on a number of fronts

during the 10-1/2 months that have elapsed since it was removed

from the Circuit Court of Cook County to this federal District

Court, their most recent prolonged struggle has been over the

hotly-contested motion of plaintiff Targin Sign Systems, Inc.

("Targin") for class certification.  With counsel for defendant

Preferred Chiropractic Center, Ltd. ("Preferred") having tendered

its Response to Plaintiff's Motion for Class Certification on

January 11, that issue--really a threshold issue, despite the

length of time it has taken to reach this point--is ripe for

resolution.  And although a thick legal forest will have to be

explored here before it is possible to emerge into the clearing

of decision, the result of that exploration is a victory for

Targin.

Both sides will certainly recall this Court's expression of shock at what was earlier revealed by Targin's supplementation in support of its class certification motion: Preferred's President Angie Skokos, who describes herself as Dr. Angie Skokos but who will be referred to here simply as "Skokos" (this Court's customary practice in speaking of individual parties--with no disrespect intended), had responded to Targin's first set of interrogatories with blatant lie after blatant lie--fully 19 times she swore under penalty of perjury to this identical language (of which Int. Ans. 2 is a prototype):

> Defendant has no knowledge with respect to any faxing
> as it did not fax nor authorized any party to send out
> a fax on its behalf.

Twice Skokos made a shorter but equally false sworn statement (of which Int. Ans. 13 is a prototype):

> Defendant was never involved in any fax transmissions
> identified in Interrogatory No. 2.

And she concluded with this similar lie (Int. Ans. 23):

> Defendant is still investigating this matter but it
> believes that Macaw, Inc. Business To Business
> Solutions and/or Maxileads and their principals and/or
> agents are the responsible parties, as Defendant never
> authorized the sending [sic] facsimile on its behalf by
> any of these entities. It only authorized a bulk
> mailing via U.S. Mail.

Now it's one of the regrettable facts of life in the legal system that clients lie. As this Court recalls, the late great legal philosopher and Second Circuit Court of Appeals Judge Jerome Frank once said essentially (perhaps in his <u>Courts on</u>

Trial):

    Most lawsuits are won on a balance of the perjury.
But quite apart from this Court's disavowal of that level of
cynicism, it believes that we are surely entitled to expect more
and better from lawyers, whose profession creates duties and
responsibilities to the legal system as well as to their clients.
Sometimes those two sets of obligations create tensions, and the
Rules of Professional Conduct address that difficult subject.  So
does Fed. R. Civ. P. ("Rule") 11(b), which deals with lawyers'
written submissions in the course of litigation.

    That makes the current submission by counsel for Preferred
profoundly disturbing:  It flouts the disclosures in Targin's
supplementation, which Targin learned through discovery from
Preferred itself, by advancing arguments that can best be
characterized as bogus.  Here's a transcript of an October 4,
2005 telephone message that Skokos conveyed to Business to
Business Solutions ("Business to Business"), the asserted culprit
to whom she has ascribed the responsibility for the fax
solicitations at issue in this litigation:

    Hello, good afternoon, this is Dr. Angie Skokos with
    Preferred Chiropractic Center.

    I spoke with Ron Hillard a few weeks ago in reference
    to the faxing, uh, some information for my business.

    I had actually misplaced the contract that he faxed me
    over and I just came across this here at home.

    Um, if you can give me a call my number is 630-543-

0147.  Uh if you let me know if I can still take part
in, uh, with this, uh, faxing of these ads.

630-543-0147.

If I can I'll get it faxed out immediately.

Again, I was speaking with Ron Hillard.

Thanks so much.  Bye bye.

Then Skokos' October 6, 2005 handwritten fax to Business to
Business read:

Please fax me the ad when completed prior to faxing to
prospective clients.

All of that is of a piece with the text of the ad itself,
which contained Skokos' literary fingerprints in the form of her
handwritten editing (see the two one-page exhibits attached to
this opinion).  Finally, on October 12, 2005 MaxiLeads, acting
for Business to Business, sent its fax to Skokos referring to
"your faxing campaign" and asking for payment of $160 "before we
begin your program"--a fax that was responded to that very same
day by Skokos' faxing of a copy of Preferred's $168 check "for us
sending 5,000 fax ads."

So what the unequivocal and undisputed facts reflect are
demonstrable and repeated lies by Preferred's principal,
Skokos--there isn't the slightest question not only that she
ordered the "faxing campaign" and that she contemplated 5,000 fax
ads, but there's not a whisper about Preferred having identified
the targets of the "faxing campaign"--or indeed any of them.  Nor

4

is there a whisper about those targets, or any of them, being people who, or institutions that, had consented to Preferred's faxing them.

Indeed, a look at the content of the ad itself--a veritable prototype of a cold mailing to strangers, to hoped-for respondents, of the same kind that is seen on TV screens all the time--really negates any notions of prior consent by the fax recipients. Thus, the ad's prominent featuring of a "$22 initial consultation ($150 Value) with this coupon (expires December 1, 2005)" is obviously the exact opposite of a communication to someone who had previously consented to the fax. And relatedly, the fax covers a broad spectrum of advertised services, similar to the classic spiel of the TV pitchman, except that it is committed to paper instead of being communicated both orally and visually.

In any event, what has been said up to this point presents the canvas on which defense counsel were required to paint their response to the motion for class certification. But before that response is examined, a few words are in order about professional responsibility in that respect. First, this District Court's LR 83.51.2, mirrored in the Illinois Supreme Court's Rule of Professional Conduct 1.2, says this in subparagraphs (d) and (g):

> (d)  A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course

5

of conduct with a client and may counsel or assist a
client to make a good-faith effort to determine the
validity, scope, meaning or application of the law.

\*          \*          \*

(g)  A lawyer who knows a client has, in the
course of the representation, perpetrated a fraud upon
a person or tribunal shall promptly call upon the
client to rectify the same, and if the client refuses
or is unable to do so, the lawyer shall reveal the
fraud to the affected person or tribunal, except when
the information is protected as a privileged
communication.

Look as well at the relevant portion of LR 83.53.1, which is

mirrored in Illinois Supreme Court Rule 3.1:

A lawyer shall not bring or defend a proceeding, or
assert or controvert an issue therein, unless there is
a basis for doing so that is not frivolous, which
includes a good-faith argument for an extension,
modification or reversal of existing law.

Finally, to much the same effect, LR 83.53.3 ("Conduct Before a

Tribunal"), which is mirrored in Illinois Supreme Court Rule 3.3,

is too lengthy to quote.  But if Preferred's counsel had read and

heeded the directions in all of those Rules, as this Court would

urge be done now, the responsive filing that has been received

from Preferred would have been far different.

This opinion turns then to that response, which is deeply

troubling in a number of respects.  As the ensuing discussion

reflects, Preferred's opposition to class certification

essentially takes the form of a disingenuous "Who, me?" (or

perhaps "Who, I?") argument.

As said earlier, Preferred's own documents confirm that

6

there is no reason not to credit the Complaint's allegations
that:

      1.  Preferred's faxes were in fact sent to more than
5,000 fax numbers, despite Preferred's use of the pejorative
adverb "allegedly," which is a totally unjustified
qualifier.  To treat Preferred's refusal to acknowledge that
fact as a basis for any rejection of class certification at
this stage of the case would seriously distort the terms and
principles underlying Rule 23.

      2.  It appears that close to 4,000 of those faxes hit
home--again despite Preferred's attempted and misleading
qualification that labels that fact as no better than
"alleged."

      3.  Those faxes were not only sent on Preferred's
behalf by Business to Business, as Preferred's Mem. 2 now
acknowledges, but the evidence tendered to this Court
reflects that the faxing was done on <u>Preferred's</u> express
direction, not as a frolic and detour on the part of
Business to Business.

Thus Preferred's challenges to the fax list, as set out at page 2
of its response, pose questions of a factual nature--essentially
matters of authentication--that once again cannot justify cutting
Targin and its counsel off at the pass.  This current threshold
stage of potential class certification is not the time or place

to engage in a battle of the claimed experts, a matter that
remains for the future.

What the arguments by Preferred's counsel have chosen to
ignore is the fact that if this case proceeds to a judgment in
favor of the plaintiff class, the class members will have the
burden of establishing their respective claims, thus providing an
independent verification of the elements already referred to.
With that said, it is in order to take a look at the straw men
that Preferred's counsel have sought to conjure up in <u>alleged</u>
support of Preferred's position (and this time this opinion's use
of "alleged" is entirely appropriate).

First as to the class certification requirement of
"numerosity," Preferred's lack-of-identification argument is
really frivolous. There Preferred tries to take advantage of its
own misconduct in calling on Business to Business to conduct
Preferred's "faxing campaign" through a Business to Business
list, not a list prepared or vetted by Preferred, by a blanket
cold faxing transmitted to strangers--strangers to Preferred,
that is. But every fax number represents a subscriber, and the
fact that a transmission sent to those fax numbers will
consequently make it possible to match names and other relevant
information through the numbers themselves is the definitive
answer to the fallacious argument by Preferred's counsel.

As for "typicality" and "commonality," any claimed issue of

8

consent by the faxees (if this Court is allowed to commit a barbarism by coining a term to describe the fax recipients) is more accurately a nonissue. Preferred is by definition the party that possesses the information needed to confirm any prior consent--*if* it exists, that is. And Preferred's directive to Business to Business was totally devoid of selectivity--it simply ordered a wholly blind solicitation.

Preferred attempts to point to opinions by this Court's colleagues, Judges Bucklo and Gettleman, for potential support in that regard.[1] But both of the opinions that it cites found no merit in the notion that such a bootless argument, focusing on a totally unsupported premise of consent, should foreclose class certification. Those judges parted company with each other as to the consequent result because of what Judge Gettleman found to be the unavailability of information sufficient to identify the fax recipients in his case. That is not at all the situation here, based on the input provided by the litigants at this stage. Again this Court declines to resolve the dispute between the

---

[1] Needless to say, this Court intends no disrespect for its two colleagues and good friends by not citing and parsing those opinions. Instead this Court recognizes--as our Court of Appeals regularly (and correctly) reminds us--that we who generate opinions at the District Court level do not create precedent. What has gone before, and what is said hereafter, in this opinion reflects this Court's views--also nonprecedential--after having fully considered its colleagues' opinions as well as other caselaw, with pronouncements only by our Court of Appeals and by the Supreme Court being fully binding here.

expert gurus, which is too merits-oriented to be given control at this point in the litigation.  In short, defense counsel's cavils in terms of the requirements of typicality and commonality might well be viewed as placing defense counsel in serious peril under Rule 11(b)(3) or (4) or both.

Next, as to the potential hurdle presented by Rule 12(b)(3), all of Preferred's arguments about individual differences among the class members as assertedly destroying that required element of class certification have ignored two basic and perfectly obvious factors:  Once again every class member who seeks recovery must show receipt of the fax, and the assertedly individualized prospect of having to prove actual damages rather than statutory damages tends to approach absolute zero on the Kelvin scale.  In that second respect, any notion that meaningful actual damages would have flowed from a faxee's receipt of a single faxed ad such as Preferred's would be wholly fanciful.[2] Instead, as just indicated in n.2, a successful class action in this case would generate a $500 award for <u>every</u> class member able

---

[2]  Targin's first of its two later self-dismissed state law claims (Count II of the Complaint) sounded in conversion:  It charged Preferred with having "permanently misappropriated the class members' fax machines, toner, paper, and employee time to Defendant's own use."  Were it not for the Act's alternative provision for statutory damages of $500 (see Act §227(b)(3)(B)), that kind of damages contention would pose a classic case for the application of the ancient de minimis non curat lex doctrine. Indeed, some courts have rejected comparable asserted deprivations on just that ground.

to prove the basic elements of his, her or its claim. Hence
Preferred's contention that questions affecting only individual
members would predominate over class issues is no better than
pure fiction--and a pretty poor quality of fiction at that.
Preferred's claimed nightmare of "hundreds or thousands of
individual proceedings" that lack common issues is a pipedream
rather than a nightmare--it too reflects fanciful frivolousness.

Those just-discussed factors interact to quantify
Preferred's potential exposure, while at the same time
solidifying the threshold requirements for class certification.
This Court therefore holds that Rule 23(b)(3) is also fully
satisfied here.

To repeat somewhat, Preferred's quarrels with the
methodology and the report of Targin's opinion witness
Biggerstaff are not only premature merits-related contentions but
are also wholly speculative. Preferred's counsel seek to have
their client squirm out from under the consequences of its
patently Act-violative conduct by pointing to problems, or more
accurately putative problems, created by Preferred itself.
Whatever one may think about the statute at issue in this case,
Congress has made a policy judgment that this Court is duty-bound
to enforce. Preferred's contentions, as conveyed by its counsel,
are reminiscent of the classic bromide about the child who,
having murdered both parents, asks the court for mercy on the

11

ground that he is an orphan.

Another totally frivolous argument bears mention--one for which Preferred's counsel and not their client bear responsibility. As stated at the outset, this action was originally brought in the state court, with Targin advancing a claim under the federal Act as well as two Illinois state law claims. Preferred removed the action to this District Court "because it arises under the laws of the United States, specifically the TCPA" (Notice of Removal ("Notice") ¶3). Two weeks later Targin's counsel voluntarily dismissed the two state law counts, leaving alive only a claim that Preferred's own Notice had labeled as arising under federal law--as enforcing a federal statute--pure and simple. Yet last week Preferred's Response 13 said for the first time:

> Jurisdiction of this Court is based upon diversity of citizenship.

That is flat-out false, and counsel had to know it was false, for Targin is an Illinois corporation and Preferred's principal place of business is also in Illinois. Indeed, if jurisdiction were based on diversity (as it is not), Preferred's counsel could not have removed the case to begin with--here is the second sentence of 28 U.S.C. §1441(b):

> Any other such action [that is, any lawsuit other than a federal-question action] shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

12

That then is absurdity number one in a final Preferred argument that is full of absurdities.  This Court's former colleague Susan Getzendanner, who left our District Court before the drafters of the federal rules drew most of the potential venom from the fangs of Rule 11 via the 1993 amendments to that Rule, used to describe lawyers' legal frivolousness in terms of the "straight face" test:  Could the lawyer keep a straight face while making the argument?  Here Preferred's argument about purported diversity of citizenship flunks that test in a nanosecond.  Parenthetically, even were that not the case, the purpose for which Preferred advances that meritless argument--its attempt to invoke New York law, which contains a rejection of nominal damages--would fail, because Illinois' "most significant contacts" test would clearly point to this state rather than to New York as providing the substantive rules of decision in a case governed by state law.  And that is so because here is where the faxees' injury was plainly felt, not in New York where Business to Business may have originated the fax transmissions.

Even that is not the ultimate absurdity (though it's reasonably close).  That award goes to defense counsel's fanciful contention that the New York law of damages applies here even though Congress has expressly prescribed statutory damages in what, at least in this Circuit, is a <u>federal</u>-question case.  As will be explained hereafter, Preferred's counsel cites on that

13

score Second Circuit caselaw that holds the only basis for federal jurisdiction under the Act is diversity of citizenship, so that state law provides the rules of decision by analogy to Erie v. Tompkins. As will be explained a bit later, quite apart from the illogic of referring to New York law rather than Illinois law if state law did control, in this instance the reliance on Second Circuit caselaw by Preferred's counsel misses the mark entirely.

But before this opinion turns to the reason for so stating, counsel's effort evokes a concern that is familiar to judges but too often escapes lawyers: the potential risk to counsel when they push obviously groundless claims. That is not solely the danger of possible sanctions under Rule 11 or under other available sources (sanctions that are not assessed that frequently)--it also involves the offending counsel's possible loss of credibility, something that can cause every argument that the lawyer may put forth to be scrutinized with greater care and, perhaps, with some degree of skepticism.

But that is really a digression--this opinion must perforce turn to the seminal question of subject matter jurisdiction. After all, if Preferred had been right in its invocation of Second Circuit caselaw as the basis for calling upon New York's state law of damages, its removal action would have been improper to begin with, and this Court would have been compelled to remand

14

this action to the Circuit Court of Cook County for lack of
subject matter jurisdiction--even at this comparatively advanced
stage of the litigation. That is so because that Court of
Appeals is one of a half dozen that hold Act §227(b)(3) precludes
federal courts from entertaining such private actions on federal-
question grounds-- and remember that federal courts are duty-
bound to identify and act upon such jurisdictional defects sua
sponte. As <u>Wernsing v. Thompson</u>, 423 F.3d 732, 743 (7th Cir.
2005)(internal citations and quotation marks omitted) has
reconfirmed the universal teaching of earlier cases:

> Jurisdiction is the power to declare law, and without
> it the federal courts cannot proceed. Accordingly, not
> only may the federal courts police subject matter
> jurisdiction sua sponte, they must.

To review the bidding before this opinion addresses the
relevant caselaw, it will be remembered that Targin originally
brought this action by calling into play the literal reading of
Act §227(b)(3), which by its terms provides for private causes of
action <u>only</u> in state courts (an admittedly counterintuitive
provision in a federal statute). In its effort to invoke that
literal limitation, Targin said in its Complaint ¶8:

> Federal jurisdiction does not exist because no federal
> question or claim is asserted.

Despite that assertion, Preferred's Notice of Removal said
it brought the case here based on 28 U.S.C. §1331, the federal-
question provision of Title 28 that confers on District Courts

15

"original jurisdiction of all actions arising under the laws of the United States." But now, apparently because Preferred's counsel believe the client's jurisdictional bread is buttered on the diversity side instead, counsel has shifted to that very different position of claimed <u>diversity</u>-based jurisdiction.[3] As stated earlier, that new position rests on the Second Circuit's consistent holding that the Act can confer only diversity jurisdiction, to the total exclusion of federal-question jurisdiction.

In that regard the Second Circuit has already been spoken of as having more than a substantial amount of company. Most recently the Tenth Circuit in <u>US Fax Law Ctr., Inc. v. iHire, Inc.</u>, 476 F.3d 1112, 1115 (10th Cir. 2007)(emphasis added) referred to an earlier Colorado District Court opinion in which "the district court below held that it lacked subject matter jurisdiction over the TCPA claims because <u>six</u> federal circuit courts have concluded, based on §227(b)(3) of the TCPA, that Congress intended to preclude federal question jurisdiction over TCPA claims."[4]

But that weight of authority elsewhere is entirely beside

---

   [3] That effort of course flouts the principle that frowns upon a litigant's thus "mending its hold." And as already explained, it is totally unsound factually to boot.

   [4] <u>US Fax Law Ctr.</u>, <u>id</u>. at 1115 n.3 explained that the court there found it unnecessary to weigh in on that issue to resolve the different question that it confronted.

16

the mark here, for <u>Brill v. Countrywide Home Loans, Inc.</u>, 427 F.3d 446 (7th Cir. 2005) has found all those courts to be out of step. After citing a number of the opinions from the six other Courts of Appeals that have said "No" in response to "the question whether suit to enforce the Telephone Consumer Protection Act may be filed or removed under the federal-question jurisdiction," (<u>id</u>. at 450), <u>Brill</u> then went on to analyze the question (<u>id</u>. at 450-51) and to reach the opposite conclusion (<u>id</u>. at 451).

This Court is of course bound by <u>Brill</u>,[5] so it must perforce retain this action on its calendar, rather than remanding it to the Circuit Court (as would have been compelled in all of those other circuits because the removal would have been invalid for lack of subject matter jurisdiction). It turns out that at least in this Circuit Preferred was right on the jurisdictional issue the first time around, despite its most recent effort to urge otherwise (with unintended consequences if it had been successful).

This has been a lengthy excursion. Where it ends is in the grant of Targin's motion for class certification. This opinion

---

[5] Indeed, it has once before credited the removability of an Act §227 action as a federal-question lawsuit on the strength of <u>Brill</u>--see its very brief memorandum order in <u>CE Design Ltd. v. Tomassone</u>, No. 07-5344, 2007 U.S. Dist. LEXIS 72190 (N.D. Sept. 27), in which Targin's counsel also represented the plaintiff there.

will be distributed at or just before the previously scheduled January 22 status hearing, at which time further proceedings to implement the class certification will be discussed.

_____
Milton I. Shadur
Senior United States District Judge

Date:  January 21, 2010

*(handwritten: website, spelling)*

## Preferred Chiropractic Center
### 715 W Lake St, Suite 104, Addison, IL 60101
**www.preferredchiropracticcenter.ejb.net**

*(handwritten: www.preferredchiropracticcenter.jb.net)*

*"We settle for nothing less than a pain free, healthy life for the entire family!"*



# Attention
# Pain Sufferers

*Safe, Natural Treatment of the*
# Cause of Your Pain
*Without Drugs, Needles, or Surgery*

- - - - - - - - - - - - - - - - - - - - - -
**$22 Initial Consultation ($150 Value)**
With this coupon (Expires December 1, 2005)
- - - - - - - - - - - - - - - - - - - - - -

## Chiropractic * Acupuncture
## Blood Work * X-Rays * Muscle Rehabilitation
## Headaches * Low Back Pain * Weight Loss

*(handwritten: PMS, Quitting Smoking.)*

## For Details, Call
# (800) 264-3898, Ext XXX

_____ The above sponsor is not affiliated with, nor endorsed by, any charitable organization _____

### Please Contribute to Reputable American Charities Dedicated to Helping Flood Victims

Advertising stimulates the economy. If you did not make your fax number available, this message was sent in error and we apologize. If you do not want to receive charitable advertising or other faxes, call (718) 645-2018, Ext 233, twenty four-hours a day, seven days a week or 8009919484, ext 399. (Lines less busy evenings, nights, and weekends) (Calling or faxing other numbers or extensions will not result in removal.) This message is the exclusive property of Macaw, SRL, 46 Match Factory St, Sec 5, Buc, Rom, 050183, 40723294664, which is solely responsible for its contents and destination. For Customer Service or information, call 24/7, The Complaint HOT LINE (718) 645-2021, Ext 232.

Ex 4-2

**Preferred Chiropractic Center**
715 W Lake St, Suite 104, Addison, IL 60101
www.preferredchiropracticenter.cjb.net

*"We settle for nothing less than a pain free, healthy life for the entire family!"*

# Attention
# Pain Sufferers

### Safe, Natural Treatment of the
## Cause of Your Pain
#### Without Drugs, Needles, or Surgery

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
## $22 Initial Consultation ($150 Value)
#### With this coupon (Expires December 1, 2005)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## Chiropractic * Acupuncture
### Blood Work * X-Rays * Muscle Rehabilitation * Headaches
### Low Back Pain * Weight Loss * PMS * Quitting Smoking

## For Details, Call
# (800) 264-3898, Ext XXX
→ Se Habla español

_____ The above sponsor is not affiliated with, nor endorsed by, any charitable organization _____

Please Contribute to Reputable American Charities Dedicated to Helping Flood Victims
Advertising stimulates the economy. If you did not make your fax number available, this message was sent in error and we apologize. If you do not want to receive charitable advertising or other faxes, call (718) 645-2018, Ext 233, twenty four-hours a day, seven days a week or 8009919484, ext 399. (Lines less busy evenings, nights, and weekends) (Calling or faxing other numbers or extensions will not result in removal.) This message is the exclusive property of Macaw, SRL, 46 Match Factory St, Sec 5, Buc, Rom, 050183, 40723294564, which is solely responsible for its contents and destination.
For Customer Service or Information, call 24/7, The Complaint HOT LINE (718) 645-2021, Ext 232

Ex 5-2